IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 22–118–BLG–SPW |
| Plaintiff, | |
| vs. | ORDER |
| CALICO PATRICE ALLARD, | |
| Defendant. | |

On September 6, 2023, Defendant Calico Patrice Allard filed a pro se motion under 18 U.S.C. § 3582(c)(1)(A) to reduce her 36-month federal sentence for wire fraud and aggravated identity theft.  (Doc. 75; *see* Doc. 69 (Judg.).)  That motion was denied on September 11, 2023, because Allard had not exhausted her administrative remedies with the Bureau of Prisons ("BOP").  (Doc. 76.)  She filed a motion for reconsideration on September 27, 2023, (Doc. 78), which was subsequently denied because, at the time, Allard was in state custody and this Court does not have jurisdiction over state facilities and inmates.  (Doc. 79.)  On October 2, 2023, Allard filed a second motion for reconsideration, (Doc. 82), which the Court granted on November 15, 2023.  (Doc. 85.)  Counsel was appointed to represent Allard.  (Doc. 86.)  Appointed counsel filed an amended motion on March 5, 2024.  (Doc. 94.)  The government opposes.  (Doc. 101.)

1

Allard's projected release date is May 11, 2025.  *See* Inmate Locator,

http://www.bop.gov/inmateloc (accessed June 5, 2024).  For the reasons stated

below, Allard's motion is denied.

ANALYSIS

The First Step Act of 2018 gives district courts wide discretion to reduce an

existing term of imprisonment so long as a defendant first seeks relief from the

Bureau of Prisons ("BOP") and the reduction: (1) is consistent with the applicable

policy statements of the Sentencing Commission, (2) takes into consideration the

sentencing factors of 18 U.S.C. § 3553(a), and (3) is warranted by "extraordinary

and compelling reasons."  18 U.S.C. § 3582(c)(1)(A); *United States v. Keller*, 2

F.4th 1278, 1284 (9th Cir. 2021) (per curiam).

Here, Allard argues her medical condition and family circumstances are

extraordinary and compelling reasons justifying her release.  (Doc. 95 at 10, 13.)

The government opposes Allard's motion on the grounds that her health condition

is being adequately managed, she is not an appropriate caregiver for her mother,

and her release would not be justified under the § 3553(a) sentencing factors.[1]

---

[1] On November 1, 2023, the Sentencing Commission amended its policy statements under the Guidelines Manual Section 1B1.13(b) to provide explicit examples of what constitutes an "extraordinary and compelling reason."  *See* U.S. Sent'g Guidelines Manual App. C, amend. 814, at 204 (Nov. 2023).  Yet both parties repeatedly rely on pre-amendment statements of law that no longer apply to motions for compassionate release.  The parties arguments are therefore considered under the framework of the current law.

2

Ultimately, because Allard has not established an extraordinary and compelling reason for her release, her motion is denied.

## I.    Exhaustion of Administrative Remedies

A defendant may only file a motion for compassionate release with the district court once she has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, Allard states that her request for relief was denied by the BOP on September 7, 2023. (*See* Doc. 78 at 1.) Allard has therefore exhausted her administrative remedies as required by statute.

## II.    Extraordinary and Compelling Reasons

On November 1, 2023, the Sentencing Commission amended its policy statements under the Guidelines Manual §1B1.13(b) to provide explicit examples of what constitutes an "extraordinary and compelling reason." *See* USSG App. C, amend. 814, at 204. Specific examples include: (1) certain serious medical circumstances of the defendant; (2) the advanced age of the defendant combined with serious health issues; (3) certain family circumstances of the defendant; (4) whether the defendant was a victim of sexual or physical abuse while in custody; (5) other circumstances (or a combination of circumstances) "similar in

3

gravity" to (1)–(4); and in some narrow situations, (6) the defendant's unusually long sentence after a change in sentencing law.[2] *United States v. Kaneko*, 2024 WL 1018362, at *2 (D. Haw. Mar. 8, 2024).

Relevant here, Allard argues two extraordinary and compelling reasons justify her release: (1) she is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which she is at risk of serious deterioration in health or death; and (2) she is the sole caregiver for her incapacitated mother.  These claims are addressed in turn.

## A.   Medical Condition

"[A] medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death" can establish an extraordinary and compelling reason for early release.  USSG §1B1.13(b)(1)(C).  Allard argues she suffers from debilitating abdominal pain associated with an inflamed and enlarged gallbladder (cholecystitis), gallstones (cholelithiasis), and kidney cysts.  (Doc. 96 at 21.) Allard asserts she "endures unrelenting pain and inability to hold down food," and

---

[2] Allard argues this list is not binding, but that is no longer the case—"because the November 1, 2023 amendments to §1B1.13 expressly apply to motions brought by the BOP Director and to those brought by individual defendants, these amendments [(former policy statements)] are now binding on the court." *Kaneko*, 2024 WL 1018362, at *2; *see also United States v. Cunningham*, 2024 WL 50908, at *1–2 (D. Mont. Jan. 4, 2024).

without much-needed medical care and surgical intervention, which is not being

provided by the BOP, she is at risk of serious deterioration of her health.  (Doc. 95

at 13.)  In response, the government argues that "Allard's condition is common and

can be appropriately treated [by the BOP]."  (Doc. 101 at 7.)  Although the

government's argument downplays the severity of Allard's medical issues, the

government is correct that Allard has not shown her current medical condition is an

extraordinary and compelling reason for her release under §1B1.13(b)(1)(C).

Allard has established that her gallbladder condition is severe and it requires

long-term medical care.  She asserts that medical professionals at the Yellowstone

County Detention Facility recommended she receive gallbladder surgery in

September, but she was transferred into federal custody before the surgery could

take place.  (*See* Docs. 95 at 10.)  Although she has not yet received that surgery,

once in federal custody, Allard immediately began receiving care for her condition.

Allard arrived at FCI Waseca on November 13, 2023.  (*Id.*)  On November

20, 2023, she underwent a comprehensive medical exam with BOP medical

provider Dr. Linda Linder, in which she noted her history with gallbladder issues,

kidney stones, and cysts.  (Doc. 96 at 1–20.)  Allard received an abdominal

ultrasound on November 22, 2023, revealing cholelithiasis, a thick gallbladder

wall, indicating cholecystitis, and the presence of two kidney cysts.  (*Id.* at 21.)  On

December 7, 2023, Allard met for a consultation with Dr. Linder, who ordered lab

tests and scheduled a gallbladder general surgery consultation and a repeat

ultrasound of Allard's kidney and bladder. (*Id*. at 23.) The consultation report

indicates a scheduled target date for an offsite general surgery evaluation of

January 31, 2024. (*Id*. at 24.) Allard received the follow-up ultrasound on January

10, 2024. (*Id*. at 25.)

Complaining of severe abdominal and back pain, Allard visited health

services on January 11, 2024, but after 2.5 hours waiting to see a doctor she "had

to leave because [she] was in so much abdominal pain and needed to vomit, [she]

could not wait any longer." (*Id*. at 26.) She returned on January 18, 2024,

reporting to the nurse that her "gallbladder [was] out of control" and that she had a

consultation for general surgery in place. (*Id*. at 27.) The sick call note indicates

Allard reported a "dull" quality of pain and a pain scale of 6. (*Id*.) The nurse

advised Allard to follow-up at sick call as needed and prescribed her over-the-

counter pain medication. (*Id*. at 28–29.) Upon review of the health services

encounter, Dr. Linder noted that "[n]o further workup [was] indicated for simple

cysts as identified by [ultrasound], CT [scan,] or MRI." (*Id*. at 30.)

Allard has submitted no medical records dated after February 7, 2024, the

date of Dr. Linder's review. As of March 5, 2024, the date of Allard's motion,

Allard had not yet been seen for the scheduled general surgical evaluation for her

gallbladder. (Doc. 95 at 12.) While this delay raises legitimate concerns about the

time it is taking Allard to receive her surgical evaluation, Allard's records do not establish that the delay has exacerbated her condition. To the contrary, her records indicate consistent care. There is no further correspondence between Allard and medical staff or any record of continuing pain. And, based on the record, it appears that Allard's condition is stable. (Doc. 95-3 at 2 (noting "Allard is medically classified as Care Level 2-Stable, Chronic Care").) Thus, Allard's medical condition does not establish an extraordinary and compelling reason for compassionate release.

### B.  Family Circumstances

Allard next argues that she has established an extraordinary and compelling reason under §1B1.13(b)(3)(C) because she is the only available caregiver for her mother, who is incapacitated. The government counters that "caring for a disabled parent is not" an extraordinary and compelling reason under the Guidelines. (*See* Doc. 101 at 8.) The government is incorrect. The November 1, 2023 Guideline revisions explicitly provide that defendants can demonstrate an extraordinary and compelling reason for compassionate release upon showing the "incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." USSG §1B1.13(b)(3)(C). Thus, the dispositive inquiries are whether Ms. Allard is incapacitated and whether Allard is her mother's only available caregiver. *See id.*

7

Allard's mother currently lives in Spearfish, South Dakota, her father passed

away in 2013, and her brother is struggling with methamphetamine addiction,

mental illness, and homelessness in Montana. (Doc. 95-2 at 3, 5.) Thus, it appears

that Allard is her mother's only available caregiver.[3]  However, Allard has not

established that her mother is incapacitated.

A letter from Allard's mother indicates she has many serious medical

conditions and may need to undergo a third heart surgery followed by gallbladder

surgery at some point in the "very near future." (Doc. 95-2 at 1.) However, the

record does not establish that she is currently incapacitated as contemplated by

§1B1.13. Allard submitted a note from Allard's mother's physician, which states

that her mother is "wheel chair bound and has other medical conditions that make

it difficult for her to manage her ADLS, and patient would benefit from help."

(Doc. 102-1.)  While Allard's mother's letter indicates she had an appointment

with her cardiologist at the end of January to determine her surgery schedule, (Doc.

95-2 at 3), there is no current timeline for this procedure in the record, and the

doctor's note, dated February 29, 2024, does not include any reference to

_____

[3] The government argues that even if Allard is her mother's only available
caregiver, she is not an "appropriate" caregiver considering her own struggles with
methamphetamine addiction. (*See* Doc. 101 at 9.) There does not appear to be any
binding authority on who is a suitable caregiver in this context, but despite her
history of relapse, there is no reason to assume that Allard, when sober, could not
serve as a caregiver as she works to maintain her sobriety.

upcoming surgeries or express urgency regarding her need for care beyond "patient would benefit from help." This is insufficient to establish an extraordinary and compelling reason for release under the Guidelines.

## C.    Conclusion

Based on the foregoing, Allard fails to show extraordinary and compelling circumstances warrant her early release. But even if she could, the § 3553(a) factors do not support release.

## III.    Section 3553(a) Factors

To determine whether compassionate release is appropriate, a court must consider the federal sentencing objectives set forth in 18 U.S.C. § 3553(a). Pertinent factors include the "nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to deter criminal conduct and protect the public, and to provide effective correctional treatment, including education or vocational training and medical care. 18 U.S.C. § 3553(a)(1), (2). Courts may also consider the advisory guideline range and the need to "avoid unwarranted sentencing disparities" among similarly situated defendants. *See id.* § 3553(a)(4), (6).

Here, the § 3553(a) factors weigh against release. Allard's instant offenses are serious. As a means to support her methamphetamine addiction, Allard

defrauded multiple Billings businesses by passing stolen checks and credit cards taken from vehicles and gyms, and in the process, stole the identities of numerous people in the community. (PSR ¶¶ 11–42.) Allard has a notable criminal history that begins at age 17 and includes prior convictions for felony fraud crimes in 2004 and felony witness tampering related to a misdemeanor sexual assault conviction in 2014. (*See id.* ¶¶ 57–64.) She also has numerous traffic citations and pending state and municipal court charges. (*Id.* ¶¶ 67–71, 73–77; *see* Doc. 70 at 1 (noting the case reflected in PSR ¶ 72 has been dismissed).) While on pretrial supervision for the instant offenses, Allard was revoked for drug use, testing positive for methamphetamine, amphetamine, alcohol, and marijuana. (*Id.* ¶ 10.) She was subsequently released to an inpatient treatment facility from which she voluntarily quit before completion, against medical advice. (*Id.*)

Thus, the Court determined that Allard required a period of incarceration for specific deterrence and to protect the public, as well as to provide her with much-needed treatment. Allard's advisory guideline range was 12 months to 18 months for wire fraud, with a mandatory consecutive term of two years imprisonment for aggravated identity theft. (*Id.* at ¶ 115.) Allard received a low-end Guideline sentence of 12 months on her wire fraud conviction and, with a consecutive 24 months for identity theft, a total custodial term of 36 months. (Doc. 69 at 2.) Thus, her existing sentence already reflects a favorable consideration of her

10

difficult personal history, her need for effective correctional treatment, and her health concerns. Put simply, Allard's sentence was the lowest the Court could justify in light of her conduct. Reducing her sentence further would denigrate the seriousness of her crimes and undermine respect for the law. *See* 18 U.S.C. § 3553(a)(2)(A)–(C).

Additionally, the Court has significant concerns about Allard's release plan and likelihood of success in the event she is released early. The presentence investigation report contains multiple references to Allard's home life and relationships with her mother and brother that may not positively support her rehabilitation. For example, on October 5, 2018, a licensed clinical social worker with South Central Treatment Associates in Billings submitted a letter to Allard's state probation and parole officer after she was prematurely terminated from sexual-offender treatment. (*See* PSR ¶ 89.) In it, he noted that Allard "has manipulated her circumstances to circumvent the release plan" and that placement in her mother's home "was expressly denied prior to her release from Montana Women's Prison." (*Id.*) He stated that Allard "has a long history of not setting boundaries with her family members." (*Id.*) At the time, Allard's brother, with whom Allard "has acknowledged [] she cannot avoid contact," was regularly using methamphetamine, taking advantage of Allard and her mother for money and other resources, and was dishonest and volatile. (*Id.*) The letter continues:

11

> When we met [Allard's] mother to approve her residence and establish her as a supervisor for [Allard], she was not honest about her alcohol use. She had no particular plan to maintain sobriety, set boundaries with [her son], or care for her own needs. She did not appear particularly concerned about [Allard's] well-being at all. Her primary concern was having her children available to take care of her.

(*Id.*) Although this statement is more than five years old, based on Allard's recent conduct and her brother's and mother's present situations, the same concerns remain—that "[b]y moving into her mom's home, there is a likelihood [] she will have some contact with alcohol and drugs, and there is no-one at the residence that is appropriate to supervise her." (*Id.*)

Furthermore, Allard has a history of walking out on court-assigned treatment programs; but, she attests that while incarcerated at FCI Waseca she has engaged in counseling and educational programs that have been "extremely helpful." (*See* Doc. 95 at 17.) The Court encourages Allard to continue taking advantage of BOP educational and rehabilitative opportunities so that she is better able to foster healthy relationships and maintain her sobriety upon release.

//

//

//

//

//

//

## CONCLUSION

Accordingly, IT IS ORDERED that the defendant's motion for

compassionate release under 18 U.S.C. § 3582(c)(1)(A) (Doc. 94) is DENIED.

DATED this $\underline{17}^{th}$ day of June, 2024.

Susan P. Watters, District Judge
United States District Court

13